UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WADE ALAN KNIGHT, | Case No. 3:22-cv-00331-MMD-CSD |
| Plaintiff, | ORDER SCREENING FIRST AMENDED COMPLAINT, GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS, AND DIRECTING SERVICE |
| v. | |
| ELKO COUNTY, *et al.*, | |
| Defendants. | |

This action began with a civil-rights complaint and an application to proceed *in forma pauperis* filed by state prisoner Wade Knight, who is currently held in the custody of the Elko County Sheriff's office at the Elko County Detention Center ("ECDC"). (ECF Nos. 1-1, 1, 3, 4.) In screening Knight's Complaint, the Court allowed the medical-indifference and bodily-privacy claims to proceed, dismissed the shower-condition-indifference claim with leave to amend by October 3, 2022, and dismissed the other claims with prejudice and without leave to amend. (ECF No. 5 at 13.) Knight has timely filed his First Amended Complaint ("FAC"). (ECF No. 7.) The Court now screens the FAC under 28 U.S.C. § 1915A, grants Knight's third application to proceed *in forma pauperis*, and directs that service of process be effectuated.

I. **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Additionally, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

1    Additionally, a reviewing court should "begin by identifying pleadings [allegations]

2    that, because they are no more than mere conclusions, are not entitled to the assumption

3    of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide

4    the framework of a complaint, they must be supported with factual allegations." *Id.* "When

5    there are well-pleaded factual allegations, a court should assume their veracity and then

6    determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining

7    whether a complaint states a plausible claim for relief . . . [is] a context-specific task that

8    requires the reviewing court to draw on its judicial experience and common sense." *Id.*

9    Finally, all or part of a complaint filed by an incarcerated person may be dismissed

10   *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This

11   includes claims based on legal conclusions that are untenable (*e.g.*, claims against

12   defendants who are immune from suit or claims of infringement of a legal interest which

13   clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*,

14   fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989);

15   *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

16   **II.    SCREENING OF FAC**

17   In his FAC, Knight sues five Defendants for events that allegedly took place at

18   ECDC. (ECF No. 7 at 1.) Knight sues Defendants Elko County, Aitor Narvaiza, Adrian

19   Parry, Starla Ricks, and Taylor Crowther. (*Id.* at 2-3.) Knight brings three claims and seeks

20   monetary relief.[1] (*Id.* at 4-18.)

21   **A.    Factual allegations[2]**

22   Knight is a state prisoner who has been sentenced to a 16-40-month term within

23   the NDOC but is housed at ECDC while he awaits trial in another case. (*Id.* at 3-4.) Knight

24   is housed in an open dorm block with 24 other detainees or inmates. (*Id.* at 4.) The

25   plumbing is damaged in Knight's dorm block. (*Id.* at 4.) Only one shower works; the other

26   showers have been shut off by maintenance. (*Id.*)

27   _____

28   [1]Kody Holland prepared or helped prepare the FAC. (ECF No. 7 at 18.)

[2]The Court uses any job title or position that Knight ascribes to Defendants. This should not be construed as a finding about the truthfulness of those allegations.

1    One of the showers is missing its entire plumbing assembly and a "huge hole" is

2    present. (*Id.*) The only working shower does not drain properly. (*Id.* at 5.) The bottom-tier

3    bathroom—where the one working shower is located—is constantly covered with dirt and

4    feces and has a terrible stench. (*Id.*) These conditions have existed for over two months.

5    (*Id.*) ECDC Director Parry is aware of the problems with the plumbing in Knight's dorm

6    block because multiple work orders for repairs were made to her, but she ignored them;

7    she ordered maintenance to turn the showers off due to leaking; and inmates have filed

8    multiple kites complaining about this condition. (*Id.* at 4-5.)

9    Knight's dorm block has cameras on the top and bottom tiers that face the

10   bathrooms from above the fire exits. (*Id.* at 7.) The cameras view inside the bathrooms.

11   (*Id.*) Knight believes that the cameras have a close and clear view of inmates using the

12   toilets, urinals, and showers. (*Id.*) Correctional officers wear body cameras and can

13   capture images of inmates using the toilets, urinals, and showers. (*Id.*)

14   An incident occurred at ECDC wherein one inmate attacked another in the

15   bathroom. (*Id.* at 7-8.) The video was close enough that the correctional officer reviewing

16   it saw an inmate curl himself into a ball during the attack. (*Id.* at 8-9.) Knight infers that

17   videos from the cameras could show inmates using the toilets, urinals, and showers. (*Id.*

18   at 9.) And thus view the inmates' exposed body parts. Knight believes that anyone can

19   access the videos because the Elko County District Attorney's Office has a policy of

20   providing anyone who pays the copying charge a complete copy of all reports, photos,

21   and compact disks it receives in connection with a formal charge. (*Id.* at 7-8.)

22   The video cameras in Knight's dorm block have been placed according to Elko

23   County policy. (*Id.* at 9.) Narvaiza and Parry are aware of and determined where the

24   cameras would be placed and know they show the inmates using the toilets, urinals, and

25   showers. (*Id.* at 9-10.) Parry is female and can view the feed or videos from the cameras.

26   (*Id.* at 10.)

27   Knight has hepatitis C. (*Id.* at 11.) Doctors Ricks and Crowther have refused to

28   treat Knight's condition, saying they don't treat chronic conditions at ECDC. (*Id.*) Ricks

4

and Crowther diagnosed Knight's condition between 2018 and 2020. (*Id.* at 13.) They pulled his blood to determine his genotype, which would allow them to order a proper treatment plan. (*Id.*) The treatment plan was sent over to the Elko County manager, but approval was delayed six months, and approval was never given. (*Id.*)

Knight has sent Ricks and Crowther kites reminding them they need to reorder his treatment plan and resubmit it to Elko County for approval. (*Id.*) Knight's approval for the treatment was delayed and denied because Elko County has a policy not to treat inmates at ECDC who have been diagnosed with Hepatitis C because it is too costly. (*Id.* at 14.) Knight's kites about this have been returned saying he will not get treatment because it costs too much. (*Id.*) Parry is responsible for overseeing documents about medical approvals. (*Id.* at 11.) When Parry receives approval from Elko County for an inmate's medical treatment, she provides the paperwork to medical providers authorizing the treatment. (*Id.*)

Parry, Ricks, and Crowther approved Knight to receive an extra mattress because of symptoms suffered from his condition. (*Id.* at 14.) Knight's viral loads are not consistent with a healthy person. (*Id.*) He is "on his death bed." (*Id.*) He has muscle failure and fatigue, fluid retention, nausea, excessive viral loads, and liver scarring. (*Id.* at 15.)

Based on these allegations, Knight contends that Defendants were deliberately indifferent to his serious medical needs and the conditions of his confinement, and violated his right to bodily privacy. Knight alleges that he is currently a state prisoner who is housed at ECDC while he awaits trial in another case. It is not clear from the allegations when Knight's custodial sentence began. Because Knight could have been both a pretrial detainee and, later, a prisoner during the time frames alleged in the FAC, the Court liberally construes the FAC as alleging claims based on the following different theories of liability: (1) Eighth and Fourteenth Amendment deliberate-medical indifference to hepatitis C condition, (2) Eighth Amendment and Fourteenth Amendment deliberate indifference to shower conditions, (3) Fourteenth Amendment right to bodily privacy, and (4) municipal liability. The Court addresses each theory in turn.

1

### B.    Deliberate medical indifference

2       Pretrial detainees may raise inadequate medical care claims under the Fourteenth

3   Amendment's Due Process Clause. *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124

4   (9th Cir. 2018). Courts evaluate these claims under an objective deliberate indifference

5   standard. *See id.* at 1125. The elements of a pretrial detainee's inadequate medical care

6   claim are:

7
> (i) the defendant made an intentional decision with respect to the conditions
> under which the plaintiff was confined; (ii) those conditions put the plaintiff
8
> at substantial risk of suffering serious harm; (iii) the defendant did not take
9
> reasonable available measures to abate that risk, even though a reasonable
> official in the circumstances would have appreciated the high degree of risk
10
> involved—making the consequences of the defendant's conduct obvious;
> and (iv) by not taking such measures, the defendant caused the plaintiff's
11
> injuries.

12   *See id.* The third element requires the defendant's conduct to be "objectively

13   unreasonable," a test that turns on the facts and circumstances of each case. *Id.* A plaintiff

14   must "prove more than negligence but less than subjective intent—something akin to

15   reckless disregard." *Id.*

16       Prisoners may raise inadequate medical care claims under the Eighth Amendment,

17   which prohibits the imposition of cruel and unusual punishment and "embodies 'broad

18   and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v.*

19   *Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when

20   he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer*

21   *v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a

22   plaintiff must satisfy both an objective standard—that the deprivation was serious enough

23   to constitute cruel and unusual punishment—and a subjective standard—deliberate

24   indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other*

25   *grounds by Peralta v. Dillard*, 744 F.3d 176, 1082-83 (9th Cir. 2014).

26       To establish the objective prong, "the plaintiff must show a serious medical need

27   by demonstrating that failure to treat a prisoner's condition could result in further

28   significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439

F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

To satisfy the subjective deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). A prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

A municipality like a county can be found liable under § 1983 if it causes the violation at issue. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978)). And private entities that contract with a county are treated like municipalities for claims brought under § 1983. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). To state a claim for municipal or county liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit. *See City of Canton*, 489 U.S. at 385. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *See Connick v. Thompson*, 563

/ / /

7

1  U.S. 51, 61 (2011). Municipalities are not vicariously liable under § 1983 for their

2  employees' actions. *See id.* at 60.

3         A policy has been defined as "a deliberate choice to follow a course of action . . .

4  made from among various alternatives by the official or officials responsible for

5  establishing final policy with respect to the subject matter in question." *Long v. Cnty. of*

6  *Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Monell*, 436 U.S. at 690); *see*

7  *also Waggy v. Spokane Cnty*. Washington, 594 F.3d 707, 713 (9th Cir. 2010). The weight

8  of authority has established that a "policy can be one of action or inaction" within the

9  meaning of *Monell. Waggy*, 594 F.3d at 713 (citing *City of Canton*, 489 U.S. at 388). "Both

10  types of claims require that the plaintiff prove a constitutional violation." *Id.* (citing 42

11  U.S.C. § 1983).

12         Based on the allegations, Knight was diagnosed with hepatitis C in 2018, 2019, or

13  2020 while he was housed at ECDC. Ricks and Crowther provided the diagnosis and

14  further examined Knight's blood to determine his genotype so they could formulate an

15  effective treatment plan. But Knight was not approved for treatment because it was too

16  costly. Elko County has a policy not to approve requests for costly hepatitis C treatment.

17         Parry, Ricks, and Crowther approved Knight's request for an extra mattress to help

18  with his symptoms. Knight has experienced muscle failure and fatigue, fluid retention, and

19  nausea because of his condition. He has excessive viral loads and liver scarring. Knight

20  has filed kites seeking treatment and been to sick calls about his symptoms. But Ricks

21  and Crowther refuse to treat his condition or even see him, saying they don't treat chronic

22  conditions at ECDC.

23         The Court finds that the allegations are enough for screening purposes to state a

24  colorable claim under the Eighth and the Fourteenth Amendments that Ricks and

25  Crowther were deliberately indifferent to Knight's serious medical need to treat his

26  hepatitis C condition. The allegations are also enough to state a colorable claim against

27  Elko County under the theory of municipal liability for its policy not to treat hepatitis C

28  conditions due to cost. But the allegations are not enough to state a colorable claim

against Parry because Knight does not allege facts that Parry knew he needed medical attention beyond the extra mattress that she approved for him. And Knight's allegation that Parry is the conduit for paperwork associated with medical-treatment approval does not state a claim because he alleges that Elko County decides whether to provide treatment—not Parry—and Elko County delayed and declined to approve his treatment. The medical-indifference claims can therefore proceed against only Ricks and Crowther, and also against Elko County under a theory of municipal liability.

### C.    Deliberate shower-condition indifference

A pretrial detainee's claims challenging unconstitutional conditions of confinement fall under the Fourteenth Amendment's Due Process Clause. *See Gordon*, 888 F.3d at 1124 & n.2. The Court evaluates Fourteenth Amendment conditions-of-confinement claims under the objective deliberate indifference standard. *See id.* To establish unconstitutional conditions of confinement, a plaintiff must prove that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125; *see also Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). When evaluating the objective reasonableness of the defendant's conduct, a pretrial detainee may show that "the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015).

A prisoner's claim challenging the conditions of his confinement are analyzed under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). A prisoner's conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food,

1  clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726,
2  731 (9th Cir. 2000).
3         When determining whether prison conditions meet the objective prong of the
4  Eighth Amendment analysis, the court must analyze each condition separately to
5  determine whether that specific condition violates the Eighth Amendment. *See Wright v.*
6  *Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). "[T]he deprivation alleged must be,
7  objectively, sufficiently serious" and "a prison official's act or omission must result in the
8  denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S.
9  825, 834 (1994) (internal quotations and citations omitted). As to the subjective prong of
10 the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate
11 indifference" to the unconstitutional conditions of confinement to establish an Eighth
12 Amendment violation. *Id.* When considering the conditions of confinement, the court
13 should consider the amount of time to which the prisoner was subjected to the condition.
14 *See Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).
15        Based on the allegations, only one shower works on Knight's dorm block. The
16 shower serves 25 inmates. The other showers don't work because the plumbing is broken
17 and water to them has been shut off. The plumbing has been removed from one shower
18 and a huge hole is present. The drain does not work well in the shower that does work,
19 so Knight encounters detritus from other inmates. The bathroom with the working shower
20 is constantly covered in dirt and feces and smells awful. These conditions have existed
21 for over two months. Multiple work orders were submitted to Parry to correct the problems,
22 but she ignored them. Parry instructed maintenance to shut off some of the showers due
23 to leaking issues. Many inmates have sent Parry kites complaining about the showers.
24        The Court finds that these allegations are enough to state a colorable claim for
25 screening purposes that the showers in Knight's dorm block constitute sufficiently serious
26 conditions for the Eighth and Fourteenth Amendment's purposes, and Parry was
27 deliberately indifferent to the health and sanitation risks posed by those conditions. The
28 shower-indifference claims can therefore proceed against only Parry.

### D.     Fourteenth Amendment—right to bodily privacy

"The right to bodily privacy [under the Fourteenth Amendment] was established in this circuit in 1963." *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1160 (9th Cir. 2020) (collecting cases). The Ninth Circuit "extended 'this right to prison inmates in 1985,'" and "held that a pretrial detainee has 'at least the same right to bodily privacy as a prisoner[.]'" *Id.* (citing *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017)). "'When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Byrd*, 845 F.3d at 923 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)) (brackets omitted). Courts consider four factors in determining if a prison regulation can survive a constitutional challenge, whether: (1) "there is a 'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it'; (2) 'there are alternative means of exercising the right'; (3) 'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources'; and (4) there is an 'absence of ready alternatives[.]'" *Id.* at 923–24 (quoting *Turner*, 482 U.S. at 89-90).

Based on the allegations, Elko County has a policy of placing security cameras at ECDC in such a way that they face into the bathrooms in the dorm block and can view inmates using the toilets, urinals, and showers. The views from these cameras are not obscured or distant. Parry and Narvaiza enacted, created, or enforced the policy because they were the officials who decided where the cameras would be placed. Narvaiza is the Sheriff of Elko County and Parry is the director of the ECDC. Female prison staff like Parry are permitted to view the live feeds or videos captured by these cameras.

The Court finds that these allegations are enough for screening purposes to state a colorable claim under the Fourteenth Amendment about the camera-placement policy at ECDC. The Fourteenth Amendment claim for violating the right to bodily privacy can therefore proceed against Parry and Narvaiza, and also against Elko County under the theory of municipal liability.

III.     **APPLICATIONS TO PROCEED IN FORMA PAUPERIS**

Knight has thrice applied for pauper status in this case. (ECF Nos. 1, 3, 4.) Knight's most recent application is complete and contains updated financial information. (*See* ECF No. 4.) So the Court denies Knight's earlier applications as moot. (ECF Nos. 1, 3.) Based on the information provided in Knight's third application, the Court finds that he is unable to prepay the full filing fee in this action. The Court therefore grants Knight's third application to proceed *in forma pauperis*.

IV.     **CONCLUSION**

It is therefore ordered that Plaintiff Knight's first two applications to proceed *in forma pauperis* (ECF Nos. 1, 3) are denied as moot and his third application (ECF No. 4) is granted. Pauper status doesn't relieve Plaintiff Knight of his obligation to pay the full $350 filing fee under 28 U.S.C. § 1915; it just means that he can do it in installments. Knight will not be required to pay an initial installment of the filing fee. And he is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of security therefore. But the full $350 filing fee will remain due and owing even if this case is later dismissed.

To ensure that Plaintiff Knight pays the full filing fee, it is further ordered that the Elko County Sheriff's Department must pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of **Wade Alan Knight, #31672** (in months that the account exceeds $10) until the full $350 filing fee has been paid for this action.

It is further ordered that the Eighth and Fourteenth Amendment claims for deliberate medical indifference to hepatitis C condition can proceed against only Defendants Starla Ricks and Taylor Crowther, and also against Elko County under the theory of municipal liability.

It is further ordered that the Eighth and Fourteenth Amendment claims for deliberate indifference to shower condition can proceed against only Defendant Adrian Parry.

It is further ordered that the Fourteenth Amendment bodily privacy claim can proceed against only Defendants Aitor Narvaiza and Parry, and also against Elko County under the theory of municipal liability.

It is further ordered that each Defendant must be served with a summons and copies of the First Amended Complaint (ECF No. 7) and this order. *See* Fed. R. Civ. P. 4. To accomplish service, Plaintiff Knight has until October 31, 2022 to provide the U.S. Marshal with the required USM-285 forms containing the relevant information as to each Defendant—one Defendant per form.

It is further ordered that after Knight receives a copy of the USM-285 forms from the U.S. Marshal showing whether service has been accomplished, he will have 20 days to file a notice with the Court identifying which Defendants were served and which were not served. If Knight wishes to have service again attempted on any unserved Defendant, he must file a motion with the Court identifying the unserved Defendant and specifying a more detailed name or address for the Defendant, or state whether some other manner of service should be attempted.

It is further ordered that Knight will serve upon all Defendants or, if an appearance has been entered by counsel, upon each Defendant's attorney, a copy of every pleading, motion, notice, or other document he submits for the Court's consideration. If Knight electronically files a document with the Court's electronic-filing system, no certificate of service is required. *See* Fed. R. Civ. P. 5(d)(1)(B); Nev. Loc. R. IC 4-1(b); Nev. Loc. R. 5-1. But if Knight mails the document to the Court, he must include a certificate stating the date that a true and correct copy of the document was mailed to each Defendant or their counsel. If counsel has entered a notice of appearance, Knight must direct service to the individual attorney named in the notice of appearance and at the physical or electronic address stated therein. The Court may disregard any document received by a district judge or magistrate judge that has not been filed with the Clerk, and any document received by a district judge, magistrate judge, or the Clerk that fails to include a certificate showing proper service when required.

The Clerk of the Court is directed to:

- Send a copy of this order to (1) the Finance Division of the Clerk's Office and (2) the attention of **Chief of Inmate Services for the Elko County Detention Center,** 775 W. Silver Street, Elko, NV 89801;

- Issue summonses for Defendants Elko County, Aitor Narvaiza, Adrian Parry, Starla Ricks, and Taylor Crowther and deliver them to the U.S. Marshal, along with sufficient copies of the First Amended Complaint (ECF No. 7) and this order, for service on Defendants; and

- Send Plaintiff Knight **five** USM-285 forms and a courtesy copy of the First Amended Complaint (ECF No. 7).

DATED THIS 3rd Day of October 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE