UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WADE ALAN KNIGHT, | Case No.: 3:22-cv-00331-MMD-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF Nos. 73, 81, 85 |
| ELKO COUNTY, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for summary judgment as to the claim asserted against defendant Starla Ricks. (ECF No. 73.) Ricks filed a response. (ECF No. 78.) Plaintiff filed a reply. (ECF No. 79.) Ricks also filed her own motion for summary judgment. (ECF No. 85.) Despite being granted several extensions of time, Plaintiff failed to file a response. (ECF Nos. 87, 93.)[1]

Defendants Elko County, Sheriff Aitor Narvaiza, and Lieutenant Adrienne Parry have also filed a motion for summary judgment. (ECF Nos. 81, 81-1 to 81-5.) As with Ricks' motion, despite being given several extensions of time to do so, Plaintiff did not file a response. (ECF Nos. 87, 93.)

After a thorough review, it is recommended that Plaintiff's motion be denied, that Defendants' motions be granted, and that judgment be entered in Defendants' favor.

---

[1] The most recent order granting Plaintiff an extension of time was served on him at his latest address of record at Northern Nevada Correctional Center. (ECF No. 93.)

## I. BACKGROUND

Plaintiff is currently an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. However, the events giving rise to this action took place while he was an inmate in the Elko County Jail. (Am. Compl., ECF No. 7.)[2]

The court screened Plaintiff's amended complaint and allowed him to proceed with a Fourteenth Amendment medical care claim against defendants Ricks, Crowther, and Elko County.[3] This claim is based on allegations that he was diagnosed with hepatitis C, and Ricks and Crowther examined his blood to determine his genotype to formulate a treatment plan, but he was not approved for treatment because it was too costly. He avers that Elko County has a policy not to approve requests for costly hepatitis C treatment. He alleges that he suffered from muscle failure and fatigue, fluid retention and nausea, and has excessive viral loads and liver scarring. He claims to have sent kites seeking treatment, but Ricks and Crowther refused to treat or see him, saying that they do not treat chronic conditions at the Elko County Jail. (ECF No. 8.)

Plaintiff was also allowed to proceed with a Fourteenth Amendment conditions of confinement claim against defendant Parry. Plaintiff alleges that for a period of time, there was only one working shower for twenty-five inmates. In the shower that was functioning, the drain did not work and Plaintiff encountered waste from other inmates. Plaintiff avers that the

---

[2] Plaintiff confirmed in his deposition that he was a pretrial detainee at the Elko County Jail during the relevant time period. (*See* ECF No. 78 at 41, depo. p. 82:22-83:2.)

[3] The screening order stated that the claim would proceed under either the Eighth or Fourteenth Amendment depending on whether plaintiff was a pretrial detainee or had been convicted. In light of his testimony that he was a pretrial detainee, Plaintiff's claims will proceed under the Fourteenth Amendment.

bathroom was constantly covered in dirt and feces and smelled awful. He claims that multiple work orders and request forms were sent to Parry to correct the conditions, but they were ignored by Parry. (*Id.*)

Finally, Plaintiff was allowed to proceed with a Fourteenth Amendment right to bodily privacy claim against defendants Elko County, Parry, and Sheriff Narvaiza. He alleges that Elko County has a policy of placing security cameras in the jail that face into the bathrooms and inmates can be viewed using toilets, urinals, and showers. He avers that Parry and Narvaiza enacted, created, or enforced this policy as they were the officials who decided where the cameras would be placed. He claims that female prison staff such as Parry can view live feeds or videos captured from the cameras. (*Id.*)

A summons was issued for defendant Crowther on October 3, 2022 (ECF No. 9, 9-4.) The summons was returned unexecuted on November 4, 2022, indicating Crowther was no longer employed at the Elko County Jail and was not served. (ECF No. 12.) Crowther should be dismissed for lack of timely service under Federal Rule of Civil Procedure 4(m).

Plaintiff moves for summary judgment as to his claim against Starla Ricks, arguing that Ricks knew about Plaintiff's hepatitis C, but she failed to provide him with any treatment. Ricks also moves for summary judgment, arguing that she complied with the standard of care, was responsive to Plaintiff's medical needs, and as such, did not violate Plaintiff's rights.

Elko County, Narvaiza, and Parry move for summary judgment. First, Elko County argues that it did not have a policy to deny treatment for hepatitis C based on cost, but it had a policy that left it to the medical provider to determine a course of treatment. In addition, Defendants contend Plaintiff received appropriate treatment for his condition and there is no evidence further treatment was warranted. Next, they argue that Plaintiff was afforded ample

cleaning supplies to clean the shower, and Parry is entitled to qualified immunity as the shower conditions of confinement claim. In addition, they argue there is nothing unconstitutional about the placement of the security camera, which is distant and obscured in the right places. Finally, they assert the individual Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

*& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Fourteenth Amendment Inadequate Medical Care

#### 1. Standard

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego,* 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). "For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth Amendment's guarantee against cruel and unusual punishment." *Id*. "However, pretrial detainees have not yet been convicted of a crime and therefore are not subject to punishment by the state. Accordingly, their rights arise under the Fourteenth Amendment's Due Process Clause." *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36, n. 16).

Following the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (pretrial detainee claim of excessive force) and the Ninth Circuit's decision in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (pretrial detainee failure to protect claim), the Ninth Circuit held in *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018), that "claims for violations of the right to adequate medical care brought by pretrial detainees against individuals under the Fourteenth Amendment must [also] be evaluated under an objective deliberate indifference standard[.]" 888 F.3d at 1124-25 (internal quotation marks and citation omitted). The elements of such a claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at a substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*.

"[T]he 'substantial risk of serious harm' prong [is] met if there was a 'serious medical need,' such that a 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Russell v. Lumpitap*, 31 F.4th 729, 739 (9th Cir. 2022) (citation omitted). "This is an objective standard, and includes the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. (citation and quotation marks omitted).

With respect to the third element, the conduct must be "objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Gordon,* 888 F.3d at 1125 (internal quotation marks and citation omitted).

"[T]he plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon,* 888 F.3d at 1125. (internal quotation marks and citation omitted). "The 'reckless disregard' standard is a formidable one." *Fraihat v. U.S. Immigration and Customs Enforcement*, 16 F.4th 613, 636 (9th Cir. 2021) (citing *Roman v. Wolf*, 977 F.3d 935, 947 (9th Cir. 2020) (per curiam)). "Neither 'mere lack of due care,' nor 'an inadvertent failure to provide adequate medical care,' nor even '[m]edical malpractice,' without more, is sufficient to meet this standard." *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06

1 (1976); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *Roman*, 977 F.3d at 947). The plaintiff must show the defendant disregarded a serious risk to the plaintiff's health "by failing to take 'reasonable and available measures' that could have eliminated that risk." *Id*. (quoting *Castro*, 933 F.3d at 1070-71).

**2. Ricks**

Ricks is a nurse practitioner employed by Medallus Medical, and it provides primary care to inmates at the Elko County Jail. (Ricks Decl., ECF No. 78 at 15 ¶¶ 2-3.) Plaintiff was a pretrial detainee inmate in the Elko County Jail from roughly May 26, 2022 until January 11, 2023. (Pl. Depo. Trans., ECF No. 78 at 22, depo. p. 6:20-23, p. 82:22-83:2.)

At the end of May 2022, Plaintiff sent requests for a second mattress, stating that he had hepatitis C and his kidneys hurt every night. (ECF No. 73 at 24.) In response, Plaintiff was told: "the [h]ep C liver pain is a chronic problem, and the req for a second mattress is DENIED." (*Id*. at 23.)

Ricks examined Plaintiff on July 18, 2022. At that time, he complained about a blackhead and ongoing psoriasis. He also mentioned that he had hepatitis C and said he had been receiving treatment in Idaho at St. Luke's. On examination, Plaintiff's abdomen and liver were non-tender, and there was no enlargement of the liver. Ricks determined to obtain Plaintiff's medical records from St. Luke's. (Ricks Decl., ECF No. 78 at 16 ¶¶ 5-6, 10-11; Pl. Depo. Trans., ECF No. 78 at 39, depo. p. 73-76.)

Ricks reviewed Plaintiff's medical records from St. Luke's. Ricks acknowledged Plaintiff had hepatitis C, but she noted he had not been treated in jail or prior to being taken into custody. There is a notation "per Provider Starla [Ricks]" that "[w]e will not treat his chronic hep C here in jail." (*Id*. at 21.) There is another notation dated July 27, 2022, that the "provider does not feel

8

that he needs treatment as this is a chronic issue." (*Id*. at 25.) A record from July 29, 2022, states the county's lawyer said to follow (medical) provider recommendations and if the provider does not recommend treatment, then the inmate will not receive treatment. (*Id*. at 20.) There is a final record dated August 2, 2022, that Plaintiff was not symptomatic at that time, and per the provider, Plaintiff did not need to be treated. (*Id*. at 19.)

In her declaration, Ricks states that Plaintiff's medical records from St. Luke's demonstrated that at the time he was seen there, he was ineligible for treatment due to ongoing positive drug tests. (Ricks Decl., ECF No. 78 at 16 ¶¶ 6, 12; Pl. Depo. Trans., ECF No. 78 at 39, depo. p. 77.) According to Ricks, the two primary drugs used to treat hepatitis C require six months of alcohol and drug sobriety. (Ricks Decl., ECF No. 78 at 16 ¶ 7.) Plaintiff testified that the last time he used illegal drugs was the day he was taken into custody (May 26) or the day before (May 25). (Pl. Depo. Trans., ECF No. 78 at X, depo. p. 84:6-14.) As such, Ricks asserts in her declaration that Plaintiff was medically ineligible for treatment, other than for acute symptoms, if and when they arose. (Ricks Decl., ECF No. 85 at 11-12 ¶ 12.) Ricks maintains that he did not manifest acute objective symptoms of hepatitis C. (*Id*. at 12 ¶ 13.)

Ricks maintains that she acted within the standard of care because if hepatitis C is not causing acute problems, it does not require treatment, and the appropriate course is to monitor and respond to acutely manifesting symptoms. She states that she actively monitored Plaintiff's condition, but he never manifested any symptoms that required active intervention.

Plaintiff argues the evidence demonstrates that Ricks knew Plaintiff had hepatitis C, yet clearly said she would not treat his chronic hepatitis C.

While Ricks now maintains that Plaintiff was ineligible for treatment, that was not cited as a reason for not treating his hepatitis C in his records at that time he was in the jail. Plaintiff also disputes that Ricks was actively monitoring his condition.

Ricks points to evidence in Plaintiff's records that he was not experiencing any acute objective symptoms from hepatitis C. Plaintiff, for his part, fails to identify any evidence to create a genuine issue of material fact that he suffered any harm as a result of the failure to provide him treatment for hepatitis C at the jail. He did submit a request for a second mattress where he asserted that his kidney pain was causing him difficulty sleeping, but his statement that hepatitis C was causing his pain is pure speculation. He provides no objective medical evidence that he was experiencing symptoms from hepatitis C. In fact, he admitted in his deposition he had not had any doctor tell him that he actually had any liver scarring. (ECF No. 37 at 36, depo. p. 63.) An exhibit to his own amended complaint also confirms that as of June 5, 2020, he was asymptomatic. (ECF No. 7-1 at 27.) There is simply no evidence that Ricks' conduct put Plaintiff at substantial risk of suffering serious harm, or that she caused him any injury. Therefore, Plaintiff's motion for summary judgment should be denied as to Ricks, and Ricks' motion for summary judgment should be granted.

**3. Elko County**

"[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019). A municipality may not, however, be sued under a *respondeat superior* theory because it employed an alleged wrongdoer. *Id*. at 603. "A plaintiff must

therefore show *deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights." *Id*. (citation and quotation marks omitted, emphasis original).

"To impose liability on a municipality under Section 1983, a plaintiff must prove: "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Gordon v. County of Orange,* 6 F.4th 961, 973 (9th Cir. 2021) (*Gordon II*) (internal quotation marks and citation omitted).

Elko County asserts that it did not have a policy to refrain from providing treatment for hepatitis C because it is too costly. Instead, Elko County maintains it is the policy of the Elko County Sheriff's Office to afford its contracted medical providers with medical autonomy, *i.e.*, they have sole judgment on medical treatment provided to inmates within the jail. (ECF No. 73 at 34.)

Plaintiff failed to respond to Elko County's motion, and therefore, he did not submit evidence to create a genuine dispute of material fact as to whether Elko County has a policy against providing treatment for hepatitis C.

Plaintiff's own motion does point to a provision in Elko County's policy that specific treatment plans should be provided for individuals with special needs, including those who are chronically ill. (ECF No. 73 at 40.) That policy, however, does not state that any form of treatment must be provided. Nor does it override the general policy that the medical providers have medical autonomy over inmate medical treatment.

In the absence of evidence of a policy against providing treatment for hepatitis C, summary judgment should be granted in Elko County's favor as to this claim.

11

**B. Fourteenth Amendment Conditions of Confinement vs Parry**

"Jail officials have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care and personal safety." *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018) (citing *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Under the Due Process Clause, detainees have a right against jail conditions or restrictions that amount to punishment." *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (internal citations and quotation marks omitted).

"Under both clauses, the plaintiff must show that the prison officials acted with 'deliberate indifference.'" *Castro*, 833 F.3d at 1068. Deliberate indifference under the Fourteenth Amendment involves an objective standard. *Id*. at 1069-70; *see also Kingsley*, 576 U.S. at 397-98. The elements of such a claim are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071.

Parry provides evidence that Plaintiff's housing area was an open-dorm tier with bunks. According to Plaintiff's deposition testimony, for about a month and a half, between 20 to 28 men were forced to use a single communal shower. Plaintiff testified that the shower drain did not work properly, and the showers were always filthy and stunk. He acknowledged in his deposition that he and the other inmates were free to clean the shower, they had supplies to do so, and that he did in fact do so. Plaintiff further testified that the conditions did not keep him from showering. Plaintiff testified that he reported the condition of the showers via telephone, but he did not testify that he advised Parry of their condition. In addition, Parry points to Plaintiff's testimony that he did not suffer any articulable injury related to the condition of the shower. (*See* Pl. Depo., ECF No. 81-1.)

Defendant Parry has pointed to evidence that the conditions in the shower did not put Plaintiff at substantial risk of suffering serious harm. While the conditions in the shower may have been less than ideal, Plaintiff admits that he had cleaning supplies and he was able to clean the shower, and that he and other inmates did so. He was not precluded from using the shower. Nor did he suffer any injury as a result of the condition of the shower. Finally, there is no evidence in the record that Parry knew of the shower condition.

Plaintiff failed to oppose the motion, and he did not present evidence to create a genuine dispute of material fact as to any of these issues. Therefore, summary judgment should be granted in defendant Parry's favor on this claim.

**C. Fourteenth Amendment Right to Bodily Privacy vs Elko County, Parry and Narvaiza**

Plaintiff alleges the surveillance camera angle violated his right to bodily privacy when he used the toilet facilities or showers.

Inmates "retain a limited right to bodily privacy." *Byrd v. Maricopa County Board of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017) (quoting *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988)). A pretrial detainee has "at least the same right to bodily privacy as a prisoner." *Id*. (citation omitted).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The court considers whether: (1) there is a valid rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) if there are alternative means of exercising the right; (3) the impact accommodation of the asserted right will have on guards and other inmates and on the allocation of prison resources; and (4) whether there is an absence of ready alternatives. *Id*. at 89-90.

In *Grummett v. Rushen*, the Ninth Circuit upheld cross-gender surveillance of showers because the viewing was "infrequent and irregular." 779 F.2d 491, 495 (9th Cir. 1985). In *Michenfelder v. Sumner*, the court held that allowing female guards to observe male inmate body cavity searches where the viewing was from a control booth with a limited view was reasonable because the female guards were "not routinely present for strip searches" and the observation from video monitors "would provide at most an indistinct, limited view." 860 F.2d 328, 334 (9th Cir. 1988).

In *Byrd*, the Ninth Circuit found the detainee stated a claim assuming he alleged that female guards could view male detainees while showering and using the toilet frequently and close up. *Byrd*, 845 F.3d at 922.

Defendants point to evidence that the security surveillance in the bathroom is reasonably related to legitimate safety and security concerns in the jail, *i.e.*, inmate violence occurs in the

14

bathroom. Plaintiff admitted as much in his deposition. (ECF No. 81-1 at 17.) Plaintiff also admitted in his deposition that the camera has a feature that obscures the view of the toilet as well as a substantial portion of the urinal area so that the inmate's unclothed body cannot be seen while engaging in those functions. When Plaintiff was asked whether this alleviated his concerns about bodily privacy, Plaintiff testified that he could still be seen while getting out of the shower. He acknowledged, however, that he could use a towel to cover himself when getting out of the shower. (ECF No. 81-1 at 22.) Plaintiff failed to respond to the motion to dispute these facts. He has not provided evidence to substantiate his allegations that detainees were seen unclothed, or that officers of the opposite sex could view the video footage either live or after-the-fact. On this record, the court cannot conclude there has been a violation of the right to bodily privacy.

In light of Plaintiff's failure to raise a genuine dispute as to any material fact, summary judgment should be granted in Defendants' favor as to the bodily privacy claim.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **DISMISSING** defendant Crowther pursuant to Federal Rule of Civil Procedure 4(m)'

(2) **DENYING** Plaintiff's motion for summary judgment as to defendant Ricks (ECF No. 73);

(3) **GRANTING** defendant Ricks' motion for summary judgment (ECF No. 85); and

(4) **GRANTING** the motion for summary judgment of defendants Elko County, Parry, and Narvaiza (ECF No. 81).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 20, 2023

_____
Craig S. Denney
United States Magistrate Judge